UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COMMUNITY HEALTH
CENTERS, INC.,

    Plaintiff,

v.      Case No. 6:23-cv-2426-JA-EJK

DIAMONDDOG SERVICES, INC.
and DIAMONDDOG
MARKETING, LLC,

    Defendants.

## ORDER

Plaintiff, Community Health Centers, Inc. (CHC), has sued Defendants, DiamondDog Services, Inc. and DiamondDog Marketing, LLC (collectively DiamondDog). CHC's operative amended complaint alleges two violations of the Digital Millenium Copyright Act (DMCA)[1] (Counts I and II) and one violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[2] (Count III). (Doc. 18 ¶¶ 22–45). DiamondDog now moves to strike Count I under Federal Rule of Civil Procedure 12(f) and the Court's inherent power and to dismiss Count III with prejudice under Federal Rule of Civil Procedure 12(b)(6). (See Doc. 26). Having reviewed the parties' submissions, the Court will grant the

---

[1] See 17 U.S.C. § 1202(a)–(b).
[2] Fla. Stat. §§ 501.201–.213.

motion to dismiss Count III in part, allowing CHC to replead, but will deny the motion to strike Count I.

I.  **FACTS**[3]

CHC is principally located in Winter Garden, Florida, and is "one of [Central Florida]'s larger not-for-profit providers of health and wellness services." (Doc. 18 ¶ 6). The DiamondDog entities are Georgia companies specializing in "website design and marketing." (*Id.* ¶ 7). Coastal Community Health Services (Coastal)—not related to CHC—is a healthcare provider located in Georgia. (*Id.* ¶ 4).

Around December 2020 or January 2021, CHC decided a new website would further its healthcare mission. (*Id.* ¶ 8). After learning how much it would cost to have a third party create a website, CHC decided to create one in-house. (*Id.* ¶¶ 9–10). "After seven months of work, including multiple draft websites that were not published," CHC's new website "went live on or about November 2, 2021." (*Id.* ¶ 12). The website was so well done that it attracted the attention of healthcare providers around the country, including Coastal, who wanted similar sites for themselves. (*See id.* ¶¶ 13–14).

On February 16, 2022, Coastal's chief executive officer contacted the CHC employees who designed the CHC website and asked if Coastal could buy the

---

[3] The Court accepts as true the well-pleaded facts in the amended complaint (Doc. 18). *See Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009).

site. (*Id.* ¶ 13). The CHC designers responded that "the website was not for sale." (*Id.*). The Coastal CEO then asked if the designers could sell Coastal the website without CHC's knowledge, and the designers responded that such conduct "would be unethical" because "the website belonged to CHC." (*Id.*). Sometime after this conversation, Coastal contracted with DiamondDog to create a website. (*Id.* ¶ 15). DiamondDog later delivered a website to Coastal "that expressly copied" CHC's site. (*Id.* ¶ 16). In doing so, DiamondDog used "text content created uniquely for" CHC and "copied actual programming code with a unique instruction." (*Id.*). DiamondDog did not acknowledge CHC's copyright in the design of the website. In fact, a "2022 version of Coastal's website removed the copyright notice at the bottom of CHC's website ('Copyright © 2022 Community Health Centers, Inc. All Rights Reserved.') and replaced it with a copyright notice in Coastal's name ('Copyright 2022 Coastal Community Health Designed and Powered by [D]iamond[D]og Strategic Marketing Services.')." (*Id.* ¶ 18).

Later, the CHC designers accessed Coastal's website and "immediately recognized their work as having been taken without permission, edited slightly, and published on the internet as Coastal's own website." (*Id.* ¶ 17). CHC sent cease-and-desist requests to DiamondDog and Coastal, but these requests were rejected. (*Id.* ¶ 19). As a result, CHC continues to suffer damages, (*id.*), "including but not limited to a lost licensing opportunity between CHC and

3

Coastal and "lost profits from other third-party licensees" because DiamondDog's copying "steer[ed] potential healthcare website design and consulting work to Diamond[D]og and away from CHC," (*id.* ¶ 45).

## II. PROCEDURAL HISTORY

In December 2023, CHC filed its initial complaint bringing three counts: common law copyright infringement (Count I), violations of subsections (a) and (b) of section 1202 of the DMCA (Count II), and a FDUTPA violation (Count III). (Doc. 1 ¶¶ 20–37). DiamondDog moved to dismiss all counts under Rule 12(b)(6). (Doc. 10). In response, CHC agreed to dismiss Count I, (Doc. 11 at 3), opposed dismissal of Count II, (*id.* at 3–7), and "ask[ed] for leave to amend Count III to add additional facts to make clear the existence of [actual] damages," (*id.* at 8). Additionally, as to Count II, CHC mentioned that it would set out the subsection (a) and subsection (b) violations in separate DMCA counts in its amended complaint. (*Id.* at 4 n.2).

The Court granted DiamondDog's motion in part and denied it in part. (Doc. 14 at 7). Counts I and III were dismissed without prejudice, and CHC was permitted to "file an amended complaint consistent with th[e] [o]rder." (*Id.*). The order did not discuss repleading Count II as separate counts. (*See id. passim*). With respect to Count III, the Court advised that business entities like CHC "frequently do not suffer actual damages from unfair and deceptive practices of competitors" because "their damages are frequently special or consequential

4

damages" not covered under the FDUTPA. (*Id.* at 5 (quoting *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 214 (Fla. 4th DCA 2019))). The Court also noted that although a non-consumer plaintiff like CHC may bring a FDUTPA claim, it must still "establish consumer injury." (*Id.* n.5 (citing *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023))).

In May 2024, CHC filed its amended complaint. (Doc. 18). Count I alleges a subsection (a) DMCA violation, Count II alleges a subsection (b) DMCA violation, and Count III alleges a FDUTPA violation. (*Id.* ¶¶ 22–45). Presumably in an effort to assert consumer injury, CHC has added to its FDUTPA count allegations that explicitly refer to "the public." (*Id.* ¶ 44). CHC now states in Count III that DiamondDog falsely "represent[ed] to the public" that Coastal owned a copyright in Coastal's website and that DiamondDog designed the site. (*Id.*). And DiamondDog made these misrepresentations, says CHC, "to show the quality of 'its work' to the public to solicit additional website design clients who otherwise might have looked to CHC for website design or consulting regarding healthcare practices." (*Id.*).

Shortly after CHC filed its amended complaint, the parties submitted their Uniform Case Management Report, which proposed November 14, 2024, as the deadline for moving to amend a pleading. (Doc. 20 at 2). The Court adopted this deadline in the Case Management and Scheduling Order. (Doc. 21 at 1).

5

## III. LEGAL STANDARDS

### A. Motion to Strike

District courts have "broad inherent powers, as well as authority under Federal Rule of Civil Procedure 12(f)[,] to 'order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'" *Dzwonkowski v. Dzwonkowski*, 298 F. App'x 885, 887 (11th Cir. 2008). However, a "motion to strike is a drastic remedy generally disfavored by the courts[] and will ordinarily be denied unless the material sought to be stricken is insufficient as a matter of law." *Arthurs v. Glob. TPA LLC*, No. 6:14-cv-1209-Orl-40TBS, 2015 U.S. Dist. LEXIS 14471, at *3 (M.D. Fla. Feb. 6, 2015).

### B. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a claim is not enough, and courts need not accept legal conclusions that lack sufficient factual support. *Id.* However, courts must accept as true a complaint's well-pleaded factual allegations and "construe them in the light most favorable to the plaintiff." *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009).

## IV. DISCUSSION

The Court discusses the motion to strike and the motion to dismiss in turn.

### A. Motion to Strike

DiamondDog contends that Count I should be stricken because CHC exceeded the Court's leave to amend when CHC asserted Count I as a new claim. (Doc. 26 at 6–8). The Court disagrees. DiamondDog does not challenge Count II and apparently does not realize that CHC separated the old Count II into the new Counts I and II, (*see id. passim*), as CHC said that it would do, (Doc. 11 at 4 n.2). Setting out the subsection (a) and subsection (b) claims in separate counts is the better practice. *See Munro v. Fairchild Tropical Botanic Garden*, No. 20-20079-CIV-SINGHAL/LOUIS, 2022 U.S. Dist. LEXIS 27504, at *26 (S.D. Fla. Jan. 13, 2022) ("Subsections (a) and (b) of [section] 1202 are different, independent causes of action." (quotation marks omitted)). Although in its order allowing CHC to amend, the Court did not mention dividing the DMCA claims into separate counts, (*see* Doc. 14), the Court does not view the division as inconsistent with its order. *See Cave v. Singletary*, 84 F.3d 1350, 1354 (11th Cir. 1996) (observing that a "district court's interpretation of its own order is properly accorded deference"). Moreover, as the parties proposed, (Doc. 20 at 2), CHC currently has until November 14, 2024, to move to amend its claims, (Doc. 21 at 1). And the Federal Rules of Civil Procedure require that the Court "freely

give" CHC leave to amend before trial "when justice so requires." Fed. R. Civ. P. 15(a)(2). For all these reasons, and because a "motion to strike is a drastic remedy," *Arthurs*, 2015 U.S. Dist. LEXIS 14471, at *3, the Court will deny DiamondDog's motion to strike Count I.

### B.   Motion to Dismiss

DiamondDog makes three arguments for Count III's dismissal with prejudice. (Doc. 26 at 8–15). First, DiamondDog maintains that the Copyright Act preempts the FDUTPA claim. (*Id.* at 12–15). Second, says DiamondDog, Count III still does not adequately allege consumer injury. (*Id.* at 8–9). And third, DiamondDog argues that the count still does not plausibly plead actual damages. (*Id.* at 9–11). The Court addresses these arguments in turn.

#### 1.   *Preemption*

The Copyright Act preempts

> all legal or equitable rights [under state law] that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.

17 U.S.C. § 301(a). "Preemption occurs if the rights at issue (1) fall within the subject matter of copyright set forth in sections 102 and 103 and (2) are equivalent to the exclusive rights of section 106." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001) (quoting *Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983)). Section 102 presumably covers the work that

CHC put into its website. *See* 17 U.S.C. § 102(a) (encompassing, for example, literary, musical, pictorial, graphic, and audiovisual works and sound recordings). Section 103 protects compilations and derivative works. *Id.* § 103. Under section 106, copyright owners have the exclusive rights to reproduce and distribute their copyrighted works, publicly perform and display the works, and make derivative works. *Id.* § 106.

The Court employs the extra-element test to determine whether the Copyright Act preempts the state-law claim. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir. 1996). Under the extra-element test, a state-law claim is preempted unless it requires an element in addition to or instead of the elements of copyright infringement and that extra element makes the claim "qualitatively different" from a copyright-infringement claim. *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001). The elements of copyright infringement are "(1) ownership of a valid copyright[] and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The elements of a FDUTPA claim are "(1) a deceptive act or unfair practice[,] (2) causation[,] and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). The Copyright Act does not per se preempt the FDUTPA. *See Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 915 (11th Cir. 1986). But when the "only deceptive or unfair practices alleged" are violations of rights protected under the

9

Copyright Act, like "the improper copying and distribution of [the plaintiff]'s copyrighted work," the FDUTPA claim is preempted. *Millennium Travel & Promotions, Inc. v. Classic Promotions & Premiums, Inc.*, No. 6:08-cv-290-Orl-28KRS, 2008 U.S. Dist. LEXIS 43486, at *9 (M.D. Fla. June 2, 2008). Because "awareness and intent are not considered to be qualitatively different elements substantial enough to serve as an 'extra element,'" *Foley*, 249 F.3d at 1285, courts do not consider claims that a defendant passed off a plaintiff's work as the defendant's own work to have an extra element under the test, *see, e.g.*, *Wicked Grips, LLC v. Badaan*, No. 8:21-cv-2131-KKM-SPF, 2022 U.S. Dist. LEXIS 111022, at *15 (M.D. Fla. June 22, 2022).

Here, the heart of CHC's FDUTPA claim is that DiamondDog copied CHC's website and then passed off the website as its own. (*See* Doc. 18 ¶¶ 40–41). This claim does not involve an extra element rendering it qualitatively different from a copyright-infringement claim. *See Wicked Grips*, 2022 U.S. Dist. LEXIS 111022, at *15. Accordingly, the FDUTPA claim asserted in the amended complaint is preempted by the Copyright Act.

    2.    *Consumer Injury*

Although a "plaintiff need not be a consumer to assert a FDUTPA claim," the plaintiff must still allege "an injury or detriment to consumers." *Ounjian*, 89 F.4th at 860 (quoting *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015)). CHC asserts

10

that DiamondDog made misrepresentations to the public. (Doc. 18 ¶ 44). But CHC does not allege that these misrepresentations caused an injury or detriment to consumers. (*See id. passim*). Whenever CHC alleges damages in its amended complaint, it refers to the damages that DiamondDog caused CHC—not the damages that DiamondDog caused consumers. (*See id.* ¶¶ 19, 31, 45). Accordingly, CHC's failure to plausibly plead consumer injury constitutes an independent basis for dismissing Count III.

### 3. *Actual Damages*

"Consequential damages are not available" under the FDUTPA. *Ounjian*, 89 F.4th at 861. Here, CHC essentially seeks lost profits. (Doc. 18 ¶ 45). And "lost profits may indeed be the quintessential example of 'consequential damages.'" *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987). Thus, CHC's failure to plausibly plead actual damages provides a third basis for dismissing Count III.

CHC "respectfully requests leave to amend." (Doc. 27 at 12). The Court will grant this request and give CHC another chance to plead a FDUTPA claim.

## V. CONCLUSION

In light of the above, it is **ORDERED** that DiamondDog's motion (Doc. 26) is **GRANTED in part and DENIED in part**. Count III of the amended complaint (Doc. 18) is **DISMISSED without prejudice**. The motion is otherwise **denied. No later than July 15, 2024**, CHC may file a second

amended complaint consistent with this Order.

**DONE** and **ORDERED** in Orlando, Florida, on July 2, 2024.

                                            JOHN ANTOON II
                                        United States District Judge

Copies furnished to:
Counsel of Record